J. N. CARLILE & CO. PLAINTIFFS IN ERROR, V. H. B.
DAUCHY, DEFENDANT IN ERROR.

[FILED APRIL 10, 1889.]

1. **Railroads:** CONTRACT FOR GRADING: WORK AND LABOR. C.
& Co. were contractors to grade the road-bed of a certain railway,
and sublet a portion of the contract to one D.  D. was insolvent,
and had taken the contract for less than the amount required to
grade the same.  C. & Co., finding the amount due for labor ex-
ceeded the estimates, and to prevent the filing of liens against
the railway, which they had agreed to prevent, demanded and
obtained from D. the pay-rolls, and undertook to pay the hands
employed by D.  One B. D., having rendered services for D.
as foreman on said contract, and with his team, presented his
account for such services to C. & Co., who paid only in part:
*Held*, That C. & Co. were liable for such services.

2. ———: ———: CONSIDERATION. The prevention of filing liens
for services rendered in grading the railway was a sufficient con-
sideration between employes of such subcontractor in grading
the railway road-bed, and the contractor, who had agreed to save
the railway company harmless from such liens.

ERROR to the district court for Otoe county.  Tried
below before CHAPMAN, J.

*Frank T. Ransom*, for plaintiff in error, cited: Bliss on
Code Pleading, secs. 268, 279, note 7, and 308; Wait's
Actions and Defenses, vol. 1, p. 90; *Bailey v. Freeman*,
4 Johns. 280; *Gyle v. Shoenbar*, 23 Cal. 538; *Morrissey
v. Kinsey*, 16 Neb. 17; *Brown v. Weber*, 38 N. Y. 187.

*John C. Watson*, and *George B. Schofield*, for defendant
in error, cited: *Crawford v. Edison*, 13 N. E. Rep. 80; *Wil-
son v. Smith*, 35 N.W. Rep. 506; *Green v. Burton*, 10 Atl.
Rep. 575; *Maurin v. Fogelberg*, 32 N.W. Rep. 858.

MAXWELL, J.

The defendant in error brought an action against the
plaintiffs in error to recover for certain services performed

22

by him.   On the trial of the cause he recovered a judgment for the sum of $181 and costs.   The cause of action is stated in the petition as follows: "Plaintiff complains of the defendants, and for cause of action alleges: That on or about the 10th day of July, 1887, one A. J. Dauchy was employed by these defendants as a subcontractor on the Talmage branch of the Missouri Pacific railroad, in the construction of said road; that the said A. J. Dauchy, as such subcontractor, employed men and teams to aid in the construction of said road; and that the defendants herein agreed to pay for the labor of the men and teams so employed by such subcontractor, and did pay a part thereof; that on or about the first day of August, 1887, plaintiff commenced work for said subcontractor at his request, and performed the labor by himself, and with his team, as set forth and itemized in the statement set forth in the exhibit attached in these pleadings and made a part of the original petition herein; that said subcontractor promised to pay said plaintiff for his labor the sum of $2 per day, and for the labor done and performed by his team, the sum of $3 per day; that there is now due on said account the sum of $405, no part of which said sum has been paid excepting the sum of $230, which the said defendants, J. N. Carlile & Co., have paid this plaintiff; that there is now due and unpaid from said defendants to said plaintiff, the sum of $175 for said labor so performed by himself and his team, together with interest thereon from the first day of December, 1887."

The answer consists of a number of specific denials of certain facts stated in the petition.   The testimony tends to show that at the time stated in the petition, one A. J. Dauchy took a contract from the plaintiffs in error to grade a portion of the Talmage branch of the Missouri Pacific railway; that the plaintiffs in error were contractors to grade said branch, or a considerable portion of it, and had sublet a portion of the work to said Dauchy; that

Dauchy was insolvent, and had taken the contract in question for less than the cost of completing the work; that in the contract of the plaintiffs in error with the railway company, there was a provision that they should discharge all liens for work and labor performed in the grading; that the plaintiffs in error, finding that the amount required to pay the hands employed by Dauchy on his contract exceeded the monthly estimates, required Dauchy to turn the pay-roll over to them, and they would pay the hands. This was done, and all the hands employed by Dauchy have been paid by the plaintiffs in error except the defendant in error. He was employed by Dauchy as foreman of the work on said contract, and rendered services as such foreman in grading the road in question, which, together with the labor of his team, amount to $405. An itemized copy of the account is attached to the petition as an exhibit. Of the amount due the defendant in error, the plaintiffs in error have paid him $230, leaving still unpaid the sum of $175. There is but little dispute in the testimony, and none whatever on the following points : First, that the plaintiffs in error, to avoid the filing of liens upon the railway in question, undertook to pay all the hands employed by A. J. Dauchy, and that they have paid all except the defendant in error; that A. J. Dauchy is insolvent, and unable to pay the defendant in error. A clear preponderance of the evidence shows that the defendant in error rendered the services set forth in the petition, and that the plaintiffs in error undertook to pay such services. The plaintiffs in error claim that there was no consideration for the agreement to pay for the services sued for. We think differently, however, as the undertaking on their part to pay for such services, was to prevent the filing of liens upon the railroad. This was a sufficient consideration.

One George Rebett, who testifies that he was superintendent and general manager of the plaintiffs in error in and about the grading in question, testifies on cross-examination as follows:

Q. Is it not a fact that you told him, (the defendant in error,) that he should never have any of this pay if you could keep him out of it?

A. I might have done that.

Q. Is it not a fact that you did that?

A. I don't know whether I did or not; I would not hesitate to tell him.

Q. You had a fuss with him, did you not?

A. I don't remember.

Q. Don't you remember whether you ever had a fuss with him or not?

A. I don't.

Q. You don't have so many fusses that you don't recollect, do you?

A. I don't remember having any fuss; I don't know what you term a fuss.

Q. You know what a "fuss" is?

A. I don't know what you term a fuss.

Q. Did you ever have a quarrel with him, or have any angry words?

A. I might have had angry words.

Q. You had a quarrel with him, too, did you not?

A. I might have had some angry words with him.

This probably explains the failure to pay the claim of defendant in error. The questions of fact were fairly submitted to the jury, the verdict is fully sustained by the evidence, and it is apparent that justice has been done. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.